Affirm in Part, Reversed and Remanded in Part and Memorandum Opinion
filed November 13, 2007








 

Affirm
in Part, Reversed and Remanded in Part and Memorandum Opinion filed November
13, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01042-CV

____________

 

MAVIS CLIFTON DUNAWAY, Appellant

 

V.

 

SUSAN DAWN DUNAWAY, Appellee

 



 

On Appeal from the 308th
District Court 

Harris County, Texas

Trial Court Cause No. 2003-31838

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Mavis Clifton Dunaway, challenges a final decree
of divorce issued on August 28, 2006.  Appellant raises five issues on appeal:
(1) whether the trial court erred in awarding spousal maintenance; (2) whether
the trial court erred in awarding spousal maintenance for an indefinite period
of time; (3) whether the divorce decree is voidable when it provides for
spousal maintenance for an indefinite period of time without specifically
finding an incapacitating physical or mental disability; (4) whether the trial
court erred in awarding Susan a $6,569.60 judgment for medical expenses without
proof the expenses were reasonable and necessary; and (5) whether the trial
court erred in denying the motion for new trial or motion to reform judgment
based on newly discovered evidence.  We affirm in part and reverse and remand
in part.

Factual and Procedural Background

Appellant and Susan married in November 1978 and separated
in 2003.  Appellant filed for divorce on June 6, 2003, and Susan filed a
counter petition on June 23, 2003.  In the final decree of divorce, the trial
court ordered appellant to pay spousal maintenance in the amount of $500 per
month until further order of the court.  The trial court also awarded Susan a
judgment against appellant for $13,953.93.  Part of the money judgment included
$6,569.60 in medical expenses incurred by Susan after appellant discontinued
her medical insurance in violation of the court=s temporary
orders.  On September 15, 2006, appellant requested the trial court file
findings of fact and conclusions of law.  Appellant filed a notice of past due
findings of fact and conclusions of law on October 9, 2006, and the trial court
issued its findings of fact and conclusions of law on December 1, 2006.  In its
findings, the trial court found during the marriage appellant was the primary
wage-earner and by agreement of the parties, Susan was a Astay at home@ wife with certain
known mental and to some extent physical limitations and disabilities.  The
court further found Susan was eligible to receive spousal maintenance because
she lacked the financial resources, including the community assets and
liabilities apportioned to her in the divorce, and the ability to meet her
needs.  In addition, the trial court found Susan was eligible to receive
maintenance based on her age, employment history, lack of earning ability, and
her physical and emotional condition.  On December 11, 2006, appellant filed a
request for additional findings of fact and conclusions of law, but the trial
court never responded.

 

 








Discussion

A.      Did the
Trial Court Err in Awarding Spousal Maintenance?

In his first issue, appellant contends the trial court
erred in awarding spousal maintenance to Susan.  More specifically, appellant
argues the evidence is legally and factually sufficient to show Susan received
sufficient property and monies to meet her minimum reasonable needs.  Appellant
also argues the trial court erred in not considering the fact Susan admitted to
three extramarital affairs.  

1.       Standard
of Review

We review the award of spousal maintenance under an abuse
of discretion standard.  Pickens v. Pickens, 62 S.W.3d 212, 214 (Tex.
App.CDallas 2001, pet.
denied).  A trial court abuses its discretion when it rules arbitrarily,
unreasonably, without regard to guiding legal principles, or without supporting
evidence.  Id.  There is no abuse of discretion if some evidence of a
substantive and probative nature supports the decision.  Dennis v. Smith,
962 S.W.2d 67, 68 (Tex. App.CHouston [1st Dist.] 1997, pet. denied). 
Under the abuse of discretion standard, legal and factual sufficiency of the
evidence are not independent grounds for asserting error; however, they are
relevant factors in assessing whether the trial court abused its discretion.  Pickens,
62 S.W.3d at 214. 

Findings of fact entered in a case tried to a court have
the same force and dignity as a jury=s verdict upon
special issues; however, they are not conclusive when a complete statement of
facts appears in the record.  Id.; Middleton v. Kawasaki Steel Corp.,
687 S.W.2d 42, 44 (Tex. App.CHouston [14th Dist.] 1985, writ ref=d n.r.e.). 
Therefore, we apply the same standards when reviewing the legal and factual
sufficiency of the evidence supporting the trial court=s fact findings as
we do when reviewing the evidence supporting a jury=s answer to a
special issue.  Pickens, 62 S.W.3d at 214.  








When reviewing the legal sufficiency of the evidence, we
review the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it.  City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We credit
favorable evidence if a reasonable fact finder could, and disregard contrary
evidence unless a reasonable fact finder could not.  Id. at 827.  The
evidence is legally sufficient if it would enable fair-minded people to reach
the verdict under review.  Id.  

When
reviewing the factual sufficiency of evidence, we consider and weigh all the
evidence and will set aside the verdict only if the evidence is so weak or if
the finding is so against the great weight and preponderance of the evidence
that it is clearly wrong or unjust.  Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001).  The trier of fact is the sole judge of the credibility of the witnesses and
the weight to be given to their testimony.  GTE Mobilnet of S. Tex. v.
Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  A trial court abuses its discretion as to legal matters when it fails
to analyze or apply the law correctly.  Pickens, 62 S.W.3d at 214 (citing Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)).

          2.       Analysis








The purpose of spousal maintenance is to provide temporary
and rehabilitative support for a spouse whose ability to support herself has
eroded over time while engaged in homemaking activities and whose capital
assets are insufficient to provide support.  Deltuva v. Deltuva, 113
S.W.3d 882, 888 (Tex. App.CDallas 2003, no pet.) (citing O=Carolan v. Hopper, 71 S.W.3d 529,
533 (Tex. App.CAustin 2002, no pet.)).  The trial court may, in its
discretion, award spousal maintenance only if the party seeking maintenance
meets specific eligibility requirements.  Id.; see Tex. Fam. Code Ann. ' 8.051 (Vernon
2006).  In marriages lasting ten years or more, a spouse is eligible to seek
spousal maintenance if the spouse lacks sufficient property to meet minimum
reasonable needs and cannot support himself or herself due to (1) an
incapacitating physical or mental disability, (2) a child in the home with a
disability requiring substantial care and supervision, or (3) the lack of
adequate earning ability.  Tex. Fam. Code Ann. ' 8.051 (Vernon
2006).  Determining the spouse=s minimum reasonable needs is a
fact-specific determination done on a case-by-case basis.  Deltuva, 113
S.W.3d at 888 (citing Amos v. Amos, 79 S.W.3d 747, 749 (Tex. App.CCorpus Christi
2002, no pet.)).     

The evidence is undisputed appellant and Susan were married
for the requisite ten years.  The two were married for approximately
twenty-seven years before obtaining a divorce.  What appellant argues is that
Susan has sufficient property to meet her minimum reasonable needs.  Appellant
claims Susan received sufficient community property in the divorce to meet her
needs and, therefore, the court abused its discretion in awarding spousal
maintenance.

Susan testified at trial her minimum monthly expenses were
approximately $1,700 per month.  She also introduced into evidence a Financial
Information Sheet which stated her necessary monthly living expenses were
$1,746 per month.  Appellant did not introduce any evidence at trial to negate
Susan=s minimum monthly
expenses; therefore, we find there is evidence sufficient for the trial court
to determine Susan=s minimum reasonable needs were $1,746 per
month.








According to the record, Susan received approximately
$32,000 in 2004 from the sale of two pieces of land and $3,600 over a period of
six months from temporary alimony payments.  However, Susan testified at the
time of trial she had already spent approximately $26,000 on groceries,
personal expenses, and car maintenance.  Susan also received property in the
final divorce decree.  The property awarded to Susan included: (1) one checking
account worth $459 at the time of trial; (2) one savings account worth $4,975.43
at the time of trial; (3) an individual retirement account worth $2,942.44 at
the time of trial; (4) two annuities worth $3,199 and $3,133 as of July 7,
2005; (5) a judgment against appellant for $13,953.93 resulting from appellant=s cancellation of
Susan=s health
insurance, one-half of the property taxes paid from community funds on the
separate property of appellant, and rental income from the separate property of
appellant; (6) a judgment against appellant for $6,500 for unpaid spousal
maintenance from August 1, 2005 through, and including, August 1, 2006; (7)
one-half of the IRS tax refund checks with Susan=s portion totaling
$2,207.47; (8) all clothing, jewelry, and other personal effects in Susan=s possession; and
(9) a 1988 Ford Crown Victoria motor vehicle.  The total amount of property
Susan received, however, includes money tied up in an IRA and annuities which
are not easily liquidated.  In considering assets awarded in the divorce, the
law does not require a spouse to spend down long-term assets, liquidate all
available assets, or incur new debt simply to obtain job skills and meet needs in
the short term.  Trueheart v. Trueheart, No. 14-02-01256-CV, 2003 WL
22176626, at *3 (Tex. App.CHouston [14th Dist.] Sept. 23, 2003, no
pet.) (mem. op.).  In addition, the court found in its findings of fact certain
community property liabilities existed at the time of the divorce.  The
community liabilities included: (1) a Discover credit card account with a
balance of $5,943.42; (2) a loan for $10,350 from Susan=s parents for legal
expenses; and (3) reimbursement for moving expenses loaned to Susan by her
parents for $750.[1]








Furthermore, the record establishes before the separation
Susan had not worked for over twenty years and her education was minimal. 
Susan had graduated from high school and taken a few college courses.  Susan
was a Astay-at-home@ wife and
appellant was the Abreadwinner.@  At the time of
trial, Susan was still unemployed but had been seeking employment since the
separation in 2003.  In July 2003, River Haven Nursing Home hired Susan to work
in the kitchen for $6.50 an hour, but she only worked there for approximately
one week.  Susan testified she quit the job because she was physically unable
to do the work. In May 2003, Susan worked at Subway for a brief period of time,
but she was subsequently laid off because of reductions in the staff.  Susan
testified in the year 2003 she only made $200, and in the year 2004 her only
income was the $32,000 from the sale of the properties.  Other than the
property received during the divorce, Susan did not have any separate property
to rely on.

In its Findings of Fact, the trial court found spousal
maintenance was justified because Susan lacked the financial resources and the
ability to meet her needs independently.  The trial court found Susan lacked
the financial resources to independently meet her needs despite the fact she
received community assets in the divorce.  The trial court further found Susan
was eligible for maintenance because of her age, employment history, lack of
earning ability, and her physical and emotional condition.  The evidence
demonstrates that because Susan=s earnings since the time of separation
were minimal, her lack of employment skills limits her to low income jobs, she
has no separate property, and her monthly expenses are approximately $1,746,
she definitely faces a monthly shortfall.  While Susan received a larger
portion of the community property than appellant, the trial court could have
reasonably concluded her funds would be exhausted before her earnings matched
her reasonable minimum monthly expenses.  See Deltuva, 113 S.W.3d at 888
(noting even though the wife was awarded the majority of the marital estate
there was evidence to support the conclusion the wife=s living expenses
would significantly exceed her income); Trueheart, 2003 WL 22176626, at
*3 (holding an award of $290,000 of community property was not sufficient to
meet wife=s minimum reasonable needs because over half of the
award was not easily liquidated and the wife=s income
generating potential was minimal).  Based on a review of the record, we cannot
conclude the trial court=s decision to order appellant to pay
spousal maintenance based on Susan=s inability to
meet her minimum reasonable needs was an abuse of discretion.  








Next, appellant argues the trial court abused its
discretion in awarding Susan spousal maintenance because it did not consider
the fact Susan admitted to three extramarital affairs during the marriage. 
Once a court determines a spouse is eligible for maintenance payments, section
8.052 of the Texas Family Code provides a non-exhaustive list of factors the
court may consider in determining Athe nature,
amount, duration, and manner of periodic payments.@  Sheshtawy v.
Sheshtawy, 150 S.W.3d 772, 777 (Tex. App.CSan Antonio 2004,
pet. denied) (citing Limbaugh v. Limbaugh, 71 S.W.3d 1, 12B13 (Tex. App.CWaco 2002, no
pet.); see Tex. Fam. Code Ann. ' 8.052.  Included
in this list of factors is any marital misconduct of the spouse seeking
maintenance. Tex. Fam. Code Ann. ' 8.052(11). 
However, the statute does not assign any weight to any particular factor.  See
id. '8.052.  

It is established in the record Susan committed adultery
three times during the course of the marriage.  The trial court heard this
testimony and stated on the record it was a Atie@ between the
parties.  During Susan=s testimony regarding her adultery,  the
court stated:

THE COURT:          I remind you,
that that=s a tie.  He=s had an affair.  She=s had an affair.@

MR. STOCKER:      Is that a
question, Judge?

THE COURT No.  It=s a statement.  It=s also an encouragement to go to
another subject that=s more relevant to the Court right
now.

MR. STOCKER:      Yes,
sir.       

Despite
the trial court=s failure to make a finding of fact
regarding Susan=s adultery, based on Susan=s testimony and
the judge=s comment during trial, we can infer the trial court
took this information into consideration.  In addition, the Findings of Fact
reflect the trial court took some of the other factors into consideration
including the contribution of Susan as the homemaker, Susan=s mental and
physical condition, appellant=s separate property, Susan=s lack of
education and employment skills, and appellant=s ability to meet
Susan=s personal needs. 
Therefore, we cannot say the trial court abused its discretion in determining
the nature, amount, duration and manner of spousal maintenance.








Furthermore, appellant only generally challenges the trial
court=s failure to
consider the extramarital affairs.  Appellant fails to specifically raise a
separate issue challenging the trial court=s failure to enter
additional findings of fact.[2] 
On December 11, 2006, appellant requested additional findings of fact and
conclusions of law from the court.  Within his request, appellant asked the
trial court to make a finding of fact that Susan admitted to three extramarital
affairs during the marriage.  The trial court did not respond to this request. 
On appeal, however, appellant does not specifically argue the trial court=s failure to enter
the additional findings of fact was error; therefore, he has waived any review
of whether these findings should have been entered.  See Tex. R. App. P.
38.1; Devine v. Dallas County, 130 S.W.3d 512, 513B14 (Tex. App.CDallas 2004, no
pet.) (holding appellant waived certain issues due to inadequate briefing). 
Consequently, we overrule appellant=s first issue.

B.      Did the
Trial Court Err in Awarding Spousal Maintenance for an Indefinite Period of
Time?

In his second issue, appellant contends the trial court
erred in awarding Susan spousal maintenance for an indefinite period of time.[3] 
More specifically, appellant argues the evidence is legally and factually
insufficient to prove Susan had an incapacitating physical or mental
disability.[4]








1.       Standard
of Review

When reviewing whether a trial court abused its discretion
by ordering spousal maintenance for an indefinite period of time, we use the
same standard as discussed above.  We review the award of spousal maintenance
under an abuse of discretion standard.  Pickens, 62 S.W.3d at 214.  A
trial court abuses its discretion when it rules arbitrarily, unreasonably,
without regard to guiding legal principles, or without supporting evidence.  Id. 
There is no abuse of discretion if some evidence of a substantive and probative
nature supports the decision.  Dennis, 962 S.W.2d at 68.  Under the
abuse of discretion standard, legal and factual sufficiency of the evidence are
not independent grounds for asserting error; however, they are relevant factors
in assessing whether the trial court abused its discretion.  Pickens, 62
S.W.3d at 214. 

2.       Analysis 








The court may only order spousal maintenance for a period
longer than three years if the recipient spouse has an incapacitating physical
or mental disability.  Tex. Fam. Code Ann. ' 8.054; Pickens,
62 S.W.3d at 215.  Testimony on incapacity need not be limited to experts.  Pickens,
62 S.W.3d at 215.  A fact finder may reasonably infer incapacity from
circumstantial evidence or the competent testimony of lay witnesses.  Id. 
The question of the extent and duration of incapacity is an issue that can be
answered by lay opinion and does not require medical testimony.  Id. at
216.  

During trial, Susan testified she had minimal brain damage
which affected both her ability to learn and to secure employment.  Susan
testified she attended special education classes starting in the second grade
until she graduated from high school.  Susan also testified she had a
deteriorating disc in her lower back, her knees often hurt, she suffered from
seizures, and she suffered from depression.  Susan testified she was on
Nuerotin and Trileptal for her seizures and Zoloft and Zocor for her depression
and cholesterol.  In addition, Susan testified her mental stress kept her from
being able to work.  She testified when she became too stressed, she would
lapse into a seizure.  Susan did admit during trial she had not seen a doctor
regarding her back pain since approximately 1996 and she had not had a seizure
since 2004.  Also, on direct examination by appellant=s attorney, Susan
testified she did not think she was incapacitated, and when asked why she
wanted alimony she stated AI feel like I need it.@  However, Susan
later explained she thought Aincapacitated@ meant being
wheelchair-bound.  Susan further testified her first paying job since
separating from appellant was in the kitchen at the River Haven Nursing Home,
but she quit after only one week because she physically could not perform the
job.  She also briefly worked at Subway, which she was physically able to do,
but was laid off due to cut backs in the staff.  Susan testified she
volunteered at two different places three to four days a week.  She testified
she could cook, clean, and drive; however, she stated her choices in employment
were limited because she could not drive on freeways due to her inability to
handle stressful situations.








Susan=s mother, Dottie King, testified Susan had
limitations through her high school years, and she became stressed and
frustrated if she had to perform her work too quickly or under pressure. 
Dottie testified she believed Susan had incapacitating mental disabilities. 
Dottie admitted Susan liked to work and wanted to work, but because of Susan=s age,
disabilities, and lack of marketable skills, she believed Susan could not
secure and maintain appropriate employment.  

Appellant testified he believed Susan could support herself
and did not think she was one-hundred percent helpless.  Appellant testified
his wife could cook, clean, drive, and perform household chores.  Appellant,
however, admitted Susan attended special education classes through high
school.  He also testified he was aware his wife had some problems with
depression, that she took medications for some health problems, and that she
was epileptic.

After reviewing all the evidence, we conclude Susan
presented some evidence of a substantive and probative nature to support the
trial court=s finding Susan has an incapacitating physical and
mental disability.  Although appellant does point to some evidence which
contravenes a finding of physical and mental disability, including his opinion
Susan can support herself, the trial court=s ruling is not so against the great
weight and preponderance of the evidence as to be clearly wrong and unjust.  Therefore, the
trial court did not abuse its discretion by awarding spousal maintenance for an
indefinite period of time.  Accordingly, we overrule appellant=s second
issue.     

C.      Is the
Divorce Decree Voidable if it Provides for Spousal Maintenance for an
Indefinite Period of Time Without Specifically Finding an Incapacitating
Physical or Mental Disability?








In his third issue, appellant argues the final divorce
decree is voidable.  Appellant argues when a court=s action is merely
contrary to a rule or statute, the action is erroneous or voidable.  Mapco,
Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990).(Br22) More specifically,
appellant contends in this case the divorce decree is voidable because the
court only implicitly found Susan suffered from an incapacitating physical or
mental disability, and therefore, the order is contrary to the Texas Family
Code which says a court may not order maintenance that remains in effect for
more than three years.  As discussed above, we do not agree with appellant=s contention that
the court only implicitly found Susan suffered from an incapacitating physical
or mental disability.  We conclude the trial court did find Susan suffered from
an incapacitating physical or mental disability in its Findings of Fact, and
consequently, the divorce decree is not voidable.  We overrule appellant=s third issue.

D.      Did the
Trial Court Err in Awarding Susan a $6,569.60 Judgment for Medical Expenses
Without Proof the Expenses Were Reasonable and Necessary?

In his fourth issue, appellant argues $6,569.60 of the
$13,953.93 judgment awarded to Susan was improper.[5] 
Appellant contends because Susan failed to comply with section 18.001 of the
Texas Civil Practice and Remedies Code and did not prove her expenses through
expert testimony, no evidence of reasonableness or necessity exists in the
record.

1. Standard of Review

When reviewing a no evidence, or legal sufficiency,
challenge, we review the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  City of Keller, 168 S.W.3d at 822.  We credit favorable
evidence if a reasonable fact finder could, and disregard contrary evidence
unless a reasonable fact finder could not.  Id. at 827.  The evidence is
legally sufficient if it would enable fair-minded people to reach the verdict
under review.  Id. at 827.  The trier of fact is the sole judge
of the witnesses= credibility and the weight to be given
their testimony.  Id. at 819.  This court cannot substitute our judgment
for that of the jury, so long as the evidence falls within the zone of
reasonable disagreement.  Id. at 822.  But if the evidence allows only
one inference, neither jurors nor the reviewing court may disregard it.  Id.
  

 

 








2.       Analysis

A claim for past medical expenses must be supported by
evidence that such expenses were reasonable and necessary as a result of the
injury.  Whitaker v. Rose, 218 S.W.3d 216, 223 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  A proponent can prove reasonableness and necessity of
past medical expenses through (1) expert testimony on the issues of
reasonableness and necessity or (2) an affidavit prepared and filed in compliance
with section 18.001 of the Texas Civil Practice and Remedies Code.  Id.;
see Tex. Civ. Prac. & Rem. Code ' 18.001 (Vernon
1997).  Proof of amounts charged or paid is not proof of reasonableness.  Jackson
v. Gutierrez, 77 S.W.3d 898, 902 (Tex. App.CHouston [14th
Dist.]  2002, no pet.) (citing Rodriguez-Narrea v. Ridinger, 19 S.W.3d
531, 532 (Tex. App.CFort Worth 2000, no pet.)). 

In this case, the only evidence Susan introduced regarding
her medical expenses was an exhibit which contained copies of her doctor bills
and prescription receipts.  During trial, appellant objected to the
introduction of the exhibit on the grounds of hearsay and improper predicate. 
In response, the judge admitted the exhibit to prove Susan had received medical
bills, but the judge stated he could not receive the exhibit for the truth of
the bills and  he could not receive them as proof the expenses reflected in the
exhibits were reasonable or necessary.  Despite this, Susan failed to produce
an affidavit in compliance with section 18.001 of the Texas Civil Practice and
Remedies Code or produce expert testimony on the issue of reasonableness and
necessity.  Consequently, there is no evidence in the record of the
reasonableness or necessity of the alleged medical expenses. 








In response to appellant=s argument,
appellee makes three arguments.  First, she argues appellant failed to
specifically challenge the trial court=s finding as to
the expenses, therefore, the finding is binding on this court.  The general
rule is that an attack on the sufficiency of the evidence must be directed at
specific findings of fact rather than at the judgment as a whole.  Halbert
v. Kidd Jones Oil Co., No. 07-04-0401-CV, 2005 WL 729039, at *3 (Tex. App.CAmarillo March 30,
2005, pet. denied) (mem. op.).  The rule has often been stated that if the
trial court=s findings of fact are not challenged by a point of
error on appeal, they are  binding upon the appellate court.  Id.  However,
a challenge to an unidentified finding of fact may be sufficient for review if
it is included in the argument of the issue or point, or if after giving
consideration to the nature of the case, the underlying applicable legal
theories, and the findings of fact provided, the specific findings of fact
which the appellant challenges can be fairly determined from the argument.  Id.
(citing Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982)).  In his
brief, appellant argues no evidence exists to support a finding that the
$6,569.60 judgment for medical expenses was reasonable and necessary.  Despite
the fact appellant does not challenge the specific finding of fact which
awarded Susan the $6,569.60 judgment, appellant=s challenge can be
determined from his argument.  Accordingly, the finding is not binding on this
court.

Appellee next argues appellant waived error on this
complaint by failing to pursue his objection to an adverse ruling.  We
disagree.  It is true appellant objected to the medical expenses exhibit, the
trial court sustained the objection as to reasonable and necessary, and
appellant did not further pursue an adverse ruling.  However, in this appeal
appellant is not challenging the admission or exclusion of evidence.  Instead,
appellant is arguing there is Ano evidence@ in the record to
support a finding of reasonable and necessary.  When appealing from a non-jury
trial, an appellant is not required to preserve allegations of legal
insufficiency.  Renteria v. Trevino, 79 S.W.3d 240, 241 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  Those claims may be raised for the first time on
appeal.  Id. at 241-42.  Accordingly, appellant did not waive error on
this complaint.








Finally, appellee argues because these medical expenses
were awarded due to appellant=s violation of the court=s temporary order,
the trial court had the discretion to award such expenses to Susan without
expert testimony or a medical record affidavit, but appellee offers no
authority to support this contention.  The law is well established that to
present an issue to this court, a party=s brief shall
contain, among other things, a clear and concise argument for the contention
made with appropriate citations to authorities and the record.  Tex. R. App. P.
38.1(h); see McIntyre v. Wilson, 50 S.W.3d 674, 682 (Tex. App.CDallas 2001, pet.
denied).  Since appellee failed to adequately brief this argument and our
research reveals no such authority, we find her argument is without merit. 
Accordingly, we sustain appellant=s fourth issue.  

E.      Did the
Trial Court Err in Denying Appellant=s Motion for New
Trial or Motion to Reform the Judgment?

In his fifth issue, appellant claims the trial court erred
by denying his  motion for new trial or a motion to reform the judgment based
on newly discovered evidence.[6] 
More specifically, appellant argues the new evidence was so material it would
probably produce a different result if a new trial were granted.

1.       Standard
of Review








Whether a motion for new trial based upon newly discovered
evidence will be granted or refused is generally a matter within the sound
discretion of the trial court.  Jackson v. Van Winkle, 660 S.W.2d 807,
809 (Tex. 1983), overruled on other grounds, 121 S.W.3d 715 (Tex.
2003).  We will not disturb the decision on appeal absent an abuse of
discretion.  Id.  In ruling on a motion for new trial, the trial court
will consider the weight and the importance of the new evidence and its bearing
upon the evidence received at trial.  Id.  The question is whether the
refusal of the trial court to grant a new trial was a manifest abuse of
discretion or a violation of a clear legal right.  Id.  An appellate
court will indulge every reasonable presumption in favor of the trial court=s refusal to grant
a new trial.  Id. at 809B10.  

A party seeking a new trial based on newly discovered evidence
must show (1) the evidence has come to his knowledge since trial; (2) the
failure to discover the evidence before trial was not due to lack of diligence;
(3) the new evidence is not cumulative; and (4) the new evidence is so material
that it would probably produce a different result if a new trial were granted. 
Id. at 809.

2.       Analysis

Appellant filed a motion for new trial or to reform the
judgment based on newly discovered evidence on September 26, 2006, and the
trial court subsequently held a hearing. During the hearing, appellant
testified he spoke with Susan in August 2006 and she informed him she had been
working at TJ Max since November 2005.  Appellant testified Susan told him she
was classified as a full-time employee and trained other employees.  

Susan testified she was employed at TJ Max as a fitting
room attendant and had been working there since November 2005.  When Susan was
hired in November 2005 she was making $7.00 per hour and working twenty-five
hours per week.  At the time of trial, Susan was making $7.25 per hour and
working thirty hours per week, which is the maximum number of hours TJ Max
allows.  Susan testified she never worked full-time for TJ Max and did not
train employees, although occasionally she would show a new employee what to do
in the fitting room.  Susan testified on cross-examination she did not want to
work more than thirty hours even if the store allowed her to do so.  On
re-direct, however, Susan testified she was unable to work more than thirty
hours per week due to her stress level.  In addition, Susan testified she had
only missed work one time since she began.








After hearing all the evidence, the trial court denied the
motion for new trial and the motion to reform judgment.  Appellant argues on
appeal he meets the four part test required for a new trial.  Appellant argues
he had no knowledge of this new evidence during trial since it occurred in
November 2005, he could not have procured it prior to trial as it did not
exist, the evidence is not merely cumulative and does not tend only to impeach,
and the evidence would probably produce a different result if a new trial were
granted.  

The record does not reflect why the trial court denied the
motion for new trial.  Regardless of the ground on which the trial court based
its decision, the trial court did not abuse its discretion.  Based on the
record, there was sufficient evidence for the trial court to decide, despite
Susan=s new monthly
income, she still could not meet her minimum reasonable needs.  A spouse=s mere employment
does not preclude an award of spousal maintenance.  Trueheart, 2003 WL
22176626, at *3 (citing In re Marriage of Hale, 975 S.W.2d 694, 698
(Tex. App.CTexarkana 1998, no pet.)); see In re Gonzalez,
No. 07-05-0205-CV, 2006 WL 3102303, at *4 (Tex. App.CAmarillo Nov. 2,
2006, no pet.) (mem. op.) (rejecting husband=s contention that
his wife=s gainful
employment during their separation before divorce precluded an award of spousal
maintenance).  The trial court could reasonably have decided Susan=s monthly income
from TJ Max, which would be approximately $870 before taxes, was still
insufficient to meet her minimum needs considering her prior testimony that her
monthly expenses totaled at least $1,700 per month.  Furthermore, there was
sufficient evidence for the trial court to decide Susan was still mentally or
physically incapacitated and, therefore, still eligible for maintenance
indefinitely.  Along with the testimony during the original trial, Susan
testified at the motion for new trial hearing she was unable to work more than
thirty hours per week due to her conditions.  We cannot say the trial court=s refusal to grant
the new trial or reform the judgment was a manifest abuse of discretion or a
violation of a clear legal right.  Accordingly, we overrule appellant=s fifth issue.

 

 








Conclusion

We affirm the trial court=s grant of spousal
maintenance for an indefinite period of time, and we affirm the trial court=s denial of a
motion for new trial or to reform the judgment.  We overrule appellant=s argument that
the divorce decree is contrary to the Texas Family Code and therefore
voidable.  We sustain appellant=s argument regarding the medical expenses
and, therefore, reverse the $6,569.60 portion of the trial court=s judgment against
appellant representing medical expenses incurred by Susan and remand for a new
trial to determine whether the expenses were reasonable and necessary.       

 

 

 

/s/      John S. Anderson                                                                                     Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed November 13, 2007.

Panel consists of Chief Justice Hedges and Justices
Anderson and Seymore.









[1]  While the trial court found certain community
liabilities existed, it did not specify in either the Final Divorce Decree or
the Findings of Fact which party was liable for the debt.





[2]  In his brief, appellant states:  AAppellee Susan Dunaway admits to having three affairs
during the marriage.  Yet the Court, in its Findings of Fact regarding the
issue of spousal maintenance, does not even mention the three affairs Appellee
admitted.  Appellant[=s] requests for additional findings of fact were
ignored by the Court.@    





[3]  Appellant breaks down his second issue into three
sub-issues: (1) the evidence is legally and factually insufficient to show
Susan has an alleged incapacitating mental disability, (2) the evidence is
legally and factually insufficient to show Susan has an alleged incapacitating
physical disability, and (3) the evidence is legally and factually insufficient
to show Susan=s alleged physical or mental disabilities caused her
to be incapacitated.  We find the sub-issues are similar enough to address
together.     





[4]  Within this issue, appellant also argues the trial court
only implicitly found Susan had an incapacitating physical or mental
disability.  Appellant argues the trial court=s Findings of Fact do not include a specific finding that Susan had an
incapacitating mental or physical disability.  We disagree with this
contention.  In the court=s Finding of Fact number 5, it states A[t]he court finds that during the marriage MAVIS
CLIFTON DUNAWAY was the primary wage-earner and by agreement of the parties,
SUSAN DAWN DUNAWAY, was a Astay-at-home@ wife with certain known mental and to some extent
physical limitations/disabilities.@ 
The court also states in Finding of Fact number 12 Susan was eligible to
receive maintenance based on direct testimony from her mother regarding her
mental disabilities and Susan=s physical and
emotional condition.  Furthermore, the court=s
explanation for awarding a disproportionate division of the estate in Finding
of Fact number 11 states Susan suffered mental disabilities resulting from
brain damage at birth and certain physical disabilities limited her ability to
maintain gainful employment.  In its Conclusion of Law number 11 the court
concludes Athat if a spouse seeking maintenance is unable to
support himself or herself through appropriate employment because of an
incapacitating physical or mental disability, the court may order maintenance
for an indefinite period for as long as the disability continues.@  Based on these findings, we do not agree with
appellant that the trial court only implicitly found an incapacitating mental
or physical disability. 





[5]  This was the portion of the judgment awarded to Susan for medical costs
incurred after appellant cancelled health insurance in violation of the court=s temporary orders.  





[6]  In his motion for new trial, appellant also argued a
new trial was warranted because (1) the evidence at trial failed to support a
finding of physical or mental disability; (2) Susan admitted to three affairs
during the marriage; (3) Susan offered no medical records or medical testimony
to support her claim of mental incapacitation; and (4) the court failed to
appoint an attorney ad litem to represent Susan.  On appeal, however, appellant
failed to brief any of these issues as they relate to the motion for new trial
and only raises the newly discovered evidence issue.  We, therefore, find all
of the other issues relating to the motion for new trial have been waived and
the only issue before us is whether the trial court erred by denying the motion
for new trial based on newly discovered evidence.  See Tex. R. App. P.
38.1; McIntyre, 50 S.W.3d at 682.