NO. 07-05-0205-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 2, 2006
_____

IN THE MATTER OF THE MARRIAGE OF
RACHEL M. GONZALEZ AND HECTOR N. GONZALEZ
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-525,138; HONORABLE CECIL G. PURYEAR, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Hector N. Gonzalez presents a single issue by which he challenges the provision of his divorce decree directing payment of spousal maintenance to appellee Rachel M. Gonzalez. We affirm the decree.

During their 22 years of marriage the couple had two daughters. Rachel also earned a college degree and taught in private school. Hector worked as a gospel singer with family members for several years. In 1999 the couple sold their house and invested the proceeds in equipment for Hector to establish a carpet cleaning business. He operated this business as a sole proprietorship through the time of trial. In 2000 and 2003 Rachel

had been diagnosed and treated for cancer. Hector moved out of their rented house in the fall of 2003. Rachel filed a petition for divorce in January 2004 alleging the marriage had become insupportable and Hector engaged in "cruel treatment." At that time the couple's older daughter, Crystal, was 18 years old and attending college in Lubbock. Their second child, Celeste, was 17 years old. Rachel's first amended petition sought a disproportionate division of the community estate and spousal maintenance. Temporary orders issued April 30, 2004 directed Hector to pay rent and utilities through that date on the house occupied by Rachel, insurance and loan payments on vehicles used by Rachel and Celeste, health insurance for Rachel and a $70 per week cash payment. Beginning May 1, 2004, Hector was ordered to pay $1715 as "spousal/child support." In the summer of 2004 Rachel and Celeste moved to Austin where Celeste began college in the fall. Celeste turned 18 in November 2004.

At the final hearing in April 2005 Hector and Rachel were the only witnesses. The parties presented differing views of the value of the carpet cleaning business. Hector believed the business had no net value while Rachel, though conceding no knowledge of business debts, valued the business at approximately $20,000. Calculation of the income from the business and its value was hindered by the poor state of business records and Hector's failure to file tax returns in 2003 and 2004. The major community debt was a joint student loan with a balance just under $38,000.[1] Rachel testified she was employed full-time as a recruiter for Austin Community College. She also testified to her income and

---

[1] Evidence indicates both spouses benefitted from the proceeds of the loan.

expenses while living in Austin. The parties also presented testimony concerning Hector's failure to make payments to Rachel required under the court's temporary support order.

The final decree terminated the marriage and divided the community estate by awarding each spouse personal property, cash and accounts. It awarded to Rachel a 1998 Chevrolet Blazer. Hector was awarded the sole proprietorship business and the 1986 van used in that business. The decree made Rachel responsible for the debt on the Chevrolet Blazer and half of the outstanding student loan. Hector was made solely responsible for all debts of the business, half of the student loan, outstanding tax liability attributable to operation of the business, and the balance due on a credit card account. He was also ordered to pay Rachel $1000 per month in spousal maintenance for twelve months beginning May 1, 2005. Finally, the order found Hector in contempt for failing to make support payments under the court's temporary orders. He was ordered to serve 180 days in jail, commitment being suspended conditioned on his payment of $6540 in past due support. Hector timely perfected appeal from the trial court's decree and, as noted, presents a single issue challenging the award of spousal maintenance.

The award of post-divorce spousal maintenance or alimony was impermissible under the statutes and public policy of Texas until 1995. *Ex parte Casey*, 944 S.W.2d 18, 19 (Tex.App.–Houston [14th Dist.] 1997, no pet.). Such awards are now authorized in limited circumstances by Chapter 8 of the Family Code. Tex. Fam. Code Ann. §§ 8.001-.305 (Vernon 2006). Section 8.051 provides a court may order maintenance payments for a spouse only if:

3

(1) the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence under Title 4 and the offense occurred:

> (A) within two years before the date on which a suit for dissolution of the marriage is filed;  or

> (B) while the suit is pending;  or

(2) the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.054, and the spouse seeking maintenance:

> (A) is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability;

> (B) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because a physical or mental disability makes it necessary, taking into consideration the needs of the child, that the spouse not be employed outside the home;  or

> (C) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054.

Tex. Fam. Code Ann. § 8.051 (Vernon 2006).  Chapter 8 also establishes a presumption against an award of spousal maintenance which may be overcome by evidence the spouse seeking maintenance has exercised diligence in seeking suitable employment or developing skills to become self supporting, or is unable to do so because the spouse or a child under the spouse's care suffers from a disability.  Tex. Fam. Code Ann. § 8.053

4

(Vernon 2006); *see Pickens v. Pickens*, 62 S.W.3d 212, 215 (Tex.App.–Dallas 2001, pet. denied) (addressing disability). Additional limitations are placed on the amount and duration of maintenance awards. Monthly maintenance may be no more than 20 percent of the obligor's average gross income or $2500, whichever is less. Tex. Fam. Code Ann. § 8.055 (Vernon 2006). The period of payments must be limited to "the shortest reasonable period that allows the spouse seeking maintenance to meet the spouse's minimum reasonable needs by obtaining appropriate employment or developing an appropriate skill," unless the spouse's ability to provide for the spouse's own needs is precluded by disability, care for a young child or other "compelling impediment." Tex. Fam. Code Ann. § 8.054(a) (Vernon 2006).

We review an award of spousal maintenance for abuse of discretion. *Alexander v. Alexander*, 982 S.W.2d 116, 119 (Tex.App.–Houston [1st Dist.] 1998, no pet). The trial court does not abuse its discretion if there is some probative and substantive evidence to support the trial court's decision or if the evidence is conflicting. *In re A.S.M.*, 172 S.W.3d 710, 717 (Tex.App.–Fort Worth 2005, no pet.). Where, as here, no findings of fact and conclusions of law are requested or filed, we presume the court made findings necessary to support its judgment. *Yarbrough v. Yarbrough*, 151 S.W.3d 687, 690 (Tex.App.–Waco 2004, no pet.). Further, the judgment must be affirmed if it can be upheld on any legal theory supported by the evidence. *Id*.

We agree with Hector's position there is no evidence of family violence or evidence that Rachel is unable to support herself because of an incapacitating disability.[2] The trial court's order can be upheld only if there is some probative evidence supporting implied findings that (1) the parties were married at least ten years, (2) Rachel lacks sufficient property to provide for her minimum reasonable needs, and (3) she clearly lacks earning ability adequate to provide for her minimum reasonable needs. *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 12 (Tex.App.–Waco 2002, no pet.).

There is no question the parties were married more than ten years. Hector also concedes that Rachel lacks sufficient property to provide for her minimum reasonable needs. Hector's brief and our review focus on the third element. The presence of that element depends on two factual determinations: Rachel's minimum reasonable needs, and whether she clearly lacked the earning ability to meet those needs. Rachel testified her expenses totaled $2824 a month, and submitted a list of monthly expenses totaling that amount. The list included the monthly payments on the 1998 Blazer, for which she was responsible under the property division, but the list did not include other needs to which Rachel testified, such as the need for new tires for the vehicle.[3] Her testimony and the list provide some probative evidence from which the court could determine her minimum

---

[2] Hector does not deny that Rachel was unable to work while recovering from surgery to treat her cancer. However, those events occurred before the divorce petition was filed.

[3] Rachel's evidence also included a list of unpaid medical expenses totaling some $7100. Her monthly expense list did not make any provision for payment of those medical expenses.

reasonable needs. *See Limbaugh*, 71 S.W.3d at 14 (relying on similar evidence to support findings of minimum reasonable needs).

Rachel's employment history is not fully developed in the evidence. As noted, at some time during the marriage, she obtained a college degree. She testified she did not hold a state teacher's certificate,[4] but had taught in a private high school that did not require certification. She last taught during the school year ending in 2003. After she and Celeste moved to Austin in the summer of 2004, Rachel worked at a department store and, for a week, at another job. She also worked part-time as a substitute teacher, earning $70 a day. Her tax return shows total 2004 wages of just over $1500. Rachel testified she borrowed money from several family members and friends. In January 2005, she obtained a full-time job as a recruiter for Austin Community College. She said her health insurance through her employer would become effective on May 1, 2005. Her monthly net income from her full-time employment was $2170, leaving a shortfall of some $650 a month when compared with her estimate of monthly expenses of $2824.

Rachel's progression from part-time to full-time employment, with increasing benefits, during the pendency of the divorce proceeding provides some evidence she exercised diligence in seeking suitable employment. The trial court did not abuse its discretion through its implied finding that she overcame the presumption established by section 8.053(a).

---

[4] She said she attempted to obtain state certification at one point, but did not "pass the test."

Hector argues that Rachel's possession of a college degree and her acquisition of full-time employment by the time of trial disqualify her from spousal maintenance through the operation of section 8.054, which limits the duration of maintenance to the "shortest reasonable period that allows the spouse seeking maintenance to meet the spouse's minimum reasonable needs by obtaining appropriate employment or developing an appropriate skill . . . ." Tex. Fam. Code Ann. § 8.054 (Vernon 2006). He contends the evidence is clear that Rachel has appropriate skills and had obtained appropriate employment. We do not agree that the possession of a college degree disqualifies one from spousal maintenance. *See Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex.App.–Dallas 2003, no pet.) (award of spousal maintenance to college graduate realtor not abuse of discretion). Nor do we agree that Rachel's mere obtaining of full-time employment precludes the award of spousal maintenance to her when evidence shows she still is not yet able to meet her minimum reasonable needs. Section 8.054 does not focus simply on the period necessary to obtain employment, but that which allows the spouse to meet minimum reasonable needs.

Hector's argument is essentially the same as that rejected by the court in *In re Marriage of Hale*, 975 S.W.2d 694 (Tex.App.–Texarkana 1998, no pet.), which found no statutory language and no authority to support the husband's contention that the wife's gainful employment during their separation before divorce precluded an award of spousal maintenance.[5] *Id*. at 698. We find no abuse of discretion in the trial court's implicit finding

[5] We recognize Rachel's earning ability in the labor market greatly exceeds that of the wife seeking maintenance in *Marriage of Hale*, 975 S.W.2d at 695-96. That difference does not detract from the applicability of the court's holding to our situation.

that Rachel, at the time of trial, clearly lacked earning ability in the labor market adequate to provide support for her minimum reasonable needs.  *See Deltuva*, 113 S.W.3d at 888 (no abuse of discretion in award of maintenance to wife who acquired real estate license and sold one house before trial) (citing *Limbaugh*, 71 S.W.3d at 15).

Appellant's issue is overruled, and the trial court's judgment is affirmed.


James T. Campbell
Justice

9